## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19CR197 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| LAVAR PARKS, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Defendant Lavar Parks asks this Court to suppress the firearm seized from him as a result of an unlawful traffic stop and search.  (Doc. 21).  Because the officers had reasonable suspicion to initiate the traffic stop and could lawfully order Defendant out of the vehicle, the Court **DENIES** Defendant's Motion to Suppress.

### I. BACKGROUND FACTS

A Federal Grand Jury indicted Defendant with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Doc. 1).  On August 5, 2019, Defendant moved to suppress the firearm as a result of an unconstitutional search and seizure. (Doc. 21).  The Government responded on September 9, 2019.  (Doc. 25).  On September 19, 2019, the Court held an evidentiary hearing.  From that hearing, the following facts came to light.

In the afternoon of February 5, 2019, City of Cleveland Police Officer Trevor Majid and his partner patrolled the City of Cleveland's Second District. There had been a recent string of vehicle thefts in the area, so officers were looking for signs of vehicle theft. Early in their shift, officers observed a bright red Audi traveling eastbound on Denison Avenue. The officers immediately looked for a license plate and noticed the license plate had a tinted cover with a salt buildup behind the cover that made the license plate blurry and hard to read.

Officer Majid then pulled behind the Audi to read the license plate. From a couple of car lengths away, with other vehicles in between the officers and the Audi, officers could not read the numbers or letters on the license plate. Eventually, Officer Majid was able to position his cruiser directly behind the Audi at a red light. By doing so, Officer Majid was able to pull his front bumper to the Audi's rear bumper and read the license plate. Officer Majid entered the plate number into his mobile computer system.

The results of the vehicle inquiry established that the Audi's registered owner was Sondra Hemphill. Officers also confirmed that there were no reports that the vehicle was stolen. However, due to the obstructed license plate, Officer Majid activated the cruiser's lights and sirens and stopped the Audi.

Upon their approach, officers found Defendant driving the Audi.[1] Defendant did not make any furtive or suspicious movements upon the officers' approach. Rather, Defendant was holding both his driver's license and proof of insurance in his hands, while simultaneously smoking a cigarette. Defendant explained that he was valid and that the car was registered to Sondra Hemphill, his girlfriend.

---

[1] Officer Majid's body camera captured the entire encounter with Defendant and corroborates Officer Majid's testimony.

During his routine questioning of Defendant, Officer Majid smelled the odor of marijuana coming from the vehicle. The officer asked if Defendant had been "smoking weed" and Defendant admitted that he had prior to driving the vehicle. Due to the odor of marijuana and Defendant's admission of being under the influence of marijuana, Officer Majid ordered Defendant to step out of the vehicle. Officer Majid testified that it was his intention to pat Defendant down for weapons. Officer Majid also testified that, up until this point, Defendant had not raised suspicion with the officers that Defendant was armed and dangerous.

Before Defendant exited the vehicle, Officer Majid asked Defendant if he had any weapons. Defendant's demeanor instantly changed. Defendant hesitated and did not immediately answer the officer. Eventually, Defendant admitted to having a pistol. Officers then removed Defendant from the vehicle and placed him in handcuffs. Upon a subsequent search, officers found a pistol on Defendant's right side, inside Defendant's pants.[2]

## II. LAW AND ANALYSIS

### A. Standard of Review

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

The guiding principle of the courts' "analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry v.*

---

[2] From the time Officer Majid stepped out of his police cruiser to the time he placed Defendant in handcuffs, just over two minutes had elapsed.

*Ohio*, 392 U.S. 1, 19 (1968)). "Reasonableness…depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id.* (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).

Defendant's Motion requires the Court decide two issues: 1) did Officer Majid initiate a lawful traffic stop? If so, 2) could Officer Majid order Defendant out of the vehicle for a pat-down when he did not have reasonable grounds to believe Defendant was armed and dangerous? For the following reasons, the Court answers these two questions in favor of the Government.

### B. Initial Traffic Stop

The initial traffic stop was lawful because Officer Majid had reasonable suspicion to believe the obstructed license plate violated the law. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 536 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255-59 (2007)). "[T]o justify this type of seizure, officers need only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." *Id.* (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)); *see also United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) ("Since failure to keep a license plate 'clearly legible' is an ongoing violation…, the standard of reasonable suspicion applies"); *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) ("Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person…of criminal activity") (citations omitted). Reasonable suspicion can rest on "a mistaken understanding of the scope of a legal prohibition." *Heien*, 135 S. Ct. at 536.

The City of Cleveland Codified Ordinance § 435.10 states:

> No person shall operate a motor vehicle upon which license plates are required by law to be displayed, unless the license plates legally registered and issued for such vehicle shall be fastened in such a manner, and not covered, obscured or concealed by any part or accessory of such vehicle or by any foreign substance or material, to be readable in its entirety from left to right.

CLEVELAND, OHIO, ORDINANCE § 435.10 (2003) (the "Ordinance").

Neither party discusses what the Ordinance means by "readable." Defendant argues that since the police were able to enter the license plate information into their mobile system, the license plate was readable. The Government argues that the cover and the salt buildup made the license plate "difficult to read," and thus not readable.

Case law on this issue is similarly sparse. Analyzing a similar Ohio statute, the Sixth Circuit has said "R.C. § 4503.21 holds drivers responsible for properly affixing their license plates and keeping them free from obstructions, such as…tinted covers." *United States v. Jones*, 479 Fed. App'x 705, 711 (6th Cir. May 4, 2012). Encountering similar facts, the Ohio Court of Appeals determined that an officer's initiation of a traffic stop based on an obstructed license plate was justified when the officer could not read the license plate from three car-lengths away due to a tinted cover and dirt and salt buildup. *Ohio v. Phillips*, 2009-Ohio-3519, ¶ 10 (2d Dist. July 17, 2009). Finally, in analyzing a Tennessee statute, the Sixth Circuit said that an officer had reasonable suspicion to believe the license plate law was being violated when officer could not perceive the expiration date while driving near the suspect vehicle. *Simpson*, 520 F.3d at 542-43.

The above case law suggests that the Audi's tinted license plate cover, dirtied with salt buildup, provided Officer Majid reasonable suspicion that the plate violated the Ordinance. Officer Majid testified he could not read the license plate until he was bumper to bumper—less than ten feet— with the vehicle. He testified that both the tinted cover and salt buildup made the

plate difficult to read.  Officer Majid provided a "particularized and objective basis" that the license plate was obstructed in violation of the Ordinance.

Importantly, the Government does not have to prove a violation of the Ordinance beyond a reasonable doubt.  *Navarette*, 572 U.S. at 397 (the reasonable suspicion standard requires "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause") (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  Thus, the fact that officers could ultimately read the license plate is not the concern.  Rather, the concern is whether Officer Majid had an objective reasonable suspicion that a violation of the Ordinance was occurring.  Because the license plate was covered with tint and dirtied with salt, the Court finds that Officer Majid did have a reasonable suspicion.

The Court finds that, since Officer Majid had reasonable suspicion to initiate the traffic stop based on a violation of the Ordinance, officers lawfully detained the vehicle.

    **C.**    **Removal from Vehicle**

Officer Majid could also order Defendant out of the vehicle despite not having reasonable grounds to believe Defendant was armed and dangerous.  "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."  *Mimms*, 434 U.S. at 111, n.6 (1977).  A particularized level of suspicion is not necessary before removing an occupant from a lawfully detained vehicle.  *See generally, id.*  Furthermore, an officer is "permitted to ask questions completely unrelated to the reason for the initial detention as long as the questions do not 'measurably extend the duration of the stop.'"  *United States v. Ivey*, 507 Fed. App'x 502, 505 (6th Cir. Dec. 4, 2012) (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).

Defendant argues that Officer's Majid's order to step out of the vehicle by itself violated Defendant's Fourth Amendment rights.  However, the Sixth Circuit in *United States v. Ivey*, determined the command and threat of pat-down—like this case—did not violate the Fourth Amendment.  In *Ivey*, officers instituted a traffic stop based on a license plate violation.  *Ivey*, 507 Fed. App'x at 503.  At one point, officers asked one of the passengers to step out of the vehicle and submit to a pat-down.  *Id.* at 104.  After stepping out of the vehicle but before the pat-down, the suspect fled on foot but, due to the assistance of an oncoming car, was apprehended before getting too far.  *Id.*  Ultimately, the Sixth Circuit determined that the officer's directive to the suspect to get out of the van and the nearly contemporaneous request to pat-down the suspect for weapons did not measurably or unreasonably extend the duration of the traffic stop for the license-plate violation and was thus lawful.  *Id.* at 505.

Similarly, Officer Majid's order to remove Defendant from the vehicle and his subsequent rationale to pat-down Defendant down did not violate Defendant's Fourth Amendment rights.  Officer Majid lawfully ordered Defendant out the car.  Before Defendant could exit, Officer Majid questioned Defendant regarding his possession of weapons.  Defendant admitted to possessing a pistol, again, before he even stepped out of the car.  As the Sixth Circuit held in *Ivey*, the Court holds the same here: Officer Majid did not violate Defendant's Fourth Amendment protections by ordering Defendant out of the car.

Furthermore, the fact that Officer Majid's subjective intention was to pat Defendant down for weapons is irrelevant.  "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Heien*, 135 S. Ct. at 539 ("We do not examine the subjective understanding of the particular officer involved").  Rather, the inquiry is an objective one; "it matters not whether the officer

subjectively believed that he had probable cause for an arrest." *Scheffler v. Lee*, 752 Fed. App'x 239, 244 (6th Cir. Oct. 5, 2018).

Looking at the facts objectively, the Court concludes Officer Majid acted properly when he ordered Defendant out of the vehicle. Before Defendant could do so, Defendant admitted to possessing the firearm. Officer Majid therefore had no further need to pat-down Defendant as he already admitted to being armed. Thus, no constitutional violation occurred.

This case is unlike *United States v. Wilson*, 506 F.3d 488 (6th Cir. 2007), which Defendant relies upon. There, officers patted down the suspect without reason to believe the suspect was armed and dangerous. *Wilson*, 506 F.3d at 491. The Sixth Circuit in *Wilson* held this violated the suspect's Fourth Amendment rights. *Id.* at 496. Here, however, there was no pat-down. There was no constitutional infringement. Rather, Defendant's intervening admission of firearm possession alleviated any constitutional concern.

Again, looking at the facts objectively, Officer Majid ordered Defendant out of the vehicle in accordance with *Mimms*. Before Defendant could leave the vehicle, he admitted to possessing a pistol. Thus, there was no need for the officer to have his own independent belief that Defendant was armed and dangerous because Defendant admitted he was armed.

Accordingly, Officer Majid did not act unreasonably in ordering Defendant out of the car, which may have triggered Defendant's admission to possessing the pistol.

### III. CONCLUSION

Officer Majid handled what could have been a tumultuous time with pose and professionalism. He had reasonable suspicion to initiate the traffic stop based on the Audi's obstructed license plate. Furthermore, Officer Majid could lawfully order Defendant out of the vehicle. Defendant admitted to possessing a pistol before he exited the vehicle. Thus, the

- 9 -

Cleveland Police did not act unreasonably in seizing and searching Defendant.  For these reasons, Defendant's Motion to Suppress is **DENIED**.

    **IT IS SO ORDERED.**

                                             s/ Christopher A. Boyko
                                            **CHRISTOPHER A. BOYKO**
                                            **United States District Judge**

**Dated: September 30, 2019**